UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SIERRA CLUB; NATIONAL PARKS CONSERVATION ASSOCIATION; ENVIRONMENTAL INTEGRITY PROJECT,<br><br>Plaintiffs,<br><br>vs.<br><br>UNITED STATES ENVIRONMENTAL PROTECTION AGENCY; MICHAEL S. REGAN, in his official capacity as Administrator U.S. Environmental Protection Agency,<br><br>Defendants. | Case No. 1:23-cv-1744-JDB |

---

**MEMORANDUM IN SUPPORT OF THE STATE OF NORTH DAKOTA'S MOTION TO INTERVENE AS DEFENDANT-INTERVENOR**

---

The State of North Dakota ("North Dakota") submits this memorandum in support of its motion to intervene as a defendant-intervenor pursuant to Fed. R. Civ. P. 24(a)(2), (b)(1)(b), (b)(2) and LcVR 7(j) of this Court. North Dakota respectfully requests that the Court grant North Dakota's motion for leave to intervene as a defendant-intervenor as of right pursuant to Fed. R. Civ. P. 24(a)(2), or alternatively for permissive intervention under Fed. R. Civ. P. 24(b)(1)(B) or Fed. R. Civ. P. 24(b)(2).[1] North Dakota seeks this intervention to protect its significant sovereign

---

[1] In accordance with LcVR 7(m), undersigned counsel for prospective Intervener-Defendant North Dakota has conferred with counsel for Plaintiffs and Counsel for Defendants. Plaintiffs reserve their position and reserve the right to file a response to North Dakota's motion to intervene. Defendants do not oppose North Dakota's motion to intervene but reserve the opportunity to file a response to North Dakota's motion to intervene.

rights and authority in this matter that are not adequately represented by any other party to this action.

## I.   INTRODUCTION

Plaintiffs' Complaint (as amended) seeks declaratory and injunctive relief against EPA based on allegations that the agency has failed to act on Regional Haze Plan submittals from thirty-four States, including North Dakota.  The relief sought by Plaintiffs' Complaint is an order compelling EPA "to take final action on the haze plans" for all thirty-four States including North Dakota "as expeditiously as possible." Amend. Compl. (ECF No. 15) at 25-26.

Plaintiffs seek to put EPA's review of North Dakota's Regional Haze Plan in a large bucket along with thirty-three other States to be evaluated by Federal Defendants.  North Dakota believes that EPA's alleged inaction on North Dakota's Regional Haze Plan is separate and distinct from EPA's alleged inaction on other State's Regional Haze Plans, consistent with the structure of the Clean Air Act ("CAA") and procedural provisions that place proper venue for any substantive challenges to EPA's evaluation of the North Dakota's Regional Haze Plan in the U.S. Court of Appeals for the Eighth Circuit.  Further, any resolution of Plaintiffs' allegations must be strictly limited to scheduling issues and not in any way, explicitly or implicitly, address, suggest, or affect the outcome of any substantive review of North Dakota's Regional Haze Plan.

## II.   NORTH DAKOTA'S INTERESTS

### A.   Central Role of States in the Clean Air Act's Visibility Program.

The CAA establishes "a comprehensive national program that made the States and the Federal Government partners in the struggle against air pollution." *Gen. Motors Corp. v. United States*, 496 U.S. 530, 532 (1990).  In this "experiment in cooperative federalism," *Michigan v. E.P.A.*, 268 F.3d 1075, 1083 (D.C. Cir. 2001), the CAA establishes that improvement of the

nation's air quality will be pursued "through state and federal regulation." *BCCA Appeal Group v. U.S. E.P.A.*, 355 F.3d 817, 821-22 (5th Cir. 2003); *see also* 42 U.S.C. § 7401(a)(3) ("air pollution prevention . . . and air pollution control at its source is **the primary responsibility of States and local governments**" (emphasis added); and 42 U.S.C. § 7407(a) ("Each State shall have the primary responsibility for assuring air quality within the entire geographic area comprising such State. . . .").

The CAA's Visibility Program is built around an aesthetic goal, set forth in Section 169A(a)(1), of "the remedying of any existing, impairment of visibility in mandatory Class I Federal areas, which impairment results from manmade air pollution." 42 U.S.C. § 7491(a)(1). There are 156 mandatory Class I areas in the United States.[2] *See* 70 Fed. Reg. 39,104, 39,105/1 (July 6, 2005). Congress made it abundantly clear that it is the States that are to implement the Visibility Program. *See* 42 U.S.C. § 7491(b)(1) (EPA is to "provide guidelines to the States," . . . "on appropriate techniques and methods for implementing this section."); *accord Am. Corn Growers Ass'n v. E.P.A.*, 291 F.3d 1, 22 (D.C. Cir. 2022) (Garland, J., concurring in part and dissenting in part). The CAA requires EPA to issue regulations that direct States to submit State Implementation Plans ("SIPs") containing "such emission limits, schedules of compliance and other measures as may be necessary to make reasonable progress toward meeting" the national visibility goal. 42 U.S.C. § 7491(b)(2). In *Corn Growers*, the D.C. Circuit emphasized that the "states . . . play the lead role in designing and implementing regional haze programs . . . ." *291 F.3d* at 2; *see also id.* at 8 (citing CAA §§ 169A(b)(2)(A); 169A(g)(2) in noting that the CAA gives "the states broad authority over [Best Available Retrofit Technology] determinations.").

---

[2] North Dakota has four Class I areas: Lostwood Wilderness Area; and the North Unit, South Unit, and Elkhorn Ranch Unit of the Theodore Roosevelt National Park.

The regional haze program is an aesthetic goal focused on restoring visibility in national parks and wilderness areas to natural conditions. 42 U.S.C. § 7491(a)(1).  This part of the CAA is not focused on public health or welfare, because these values are protected through the CAA's ambient air quality standards.  *See* 42 U.S.C. § 7409(b).   Although Congress set a visibility goal, Congress did not make the goal mandatory or set a deadline for achieving it. 42 U.S.C. § 7491.

Each State's SIP is required to "address regional haze in each mandatory Class I Federal area located within the State and in each mandatory Class I Federal area located outside the State which may be affected by emissions from within the State." 40 C.F.R. §§ 51.308(d), (f).  In developing SIPs, States balance economic factors with visibility improvement to avoid major economic disruptions.  Congress required States to develop plans that ensure progress towards the visibility goal but also wanted States to weigh the benefits of making progress towards the visibility goal against the costs.  *See* 42 U.S.C. § 7491(g)(1).

In the second Regional Haze planning period, States must set reasonable progress goals to achieve natural visibility in Class I Federal areas by 2064.  40 C.F.R. §§ 51.308(f), (d).  "[T]he reasonable progress goals must provide for an improvement in visibility for the most impaired days since the baseline period and ensure no degradation in visibility for the clearest days since the baseline period." 40 C.F.R. § 51.308(f)(3)(i).  The applicable federal regulations also provide that if a State contains sources of emissions that are reasonably anticipated to contribute to visibility impairment in another State's Class I Federal area that is not achieving the uniform rate of progress glidepath, the State must provide a "robust demonstration" that there are no additional reasonable emission reduction measures.  40 C.F.R. § 51.308(f)(3)(ii).

### B.  North Dakota's Regional Haze Plan.

North Dakota has long been committed to protecting the State's air quality and the health of its citizens.  North Dakota has successfully designed, implemented, and enforced air quality programs that have resulted in North Dakota being one of only 17 States that comply with all federal ambient air quality standards – standards set by EPA solely based on science and for the purpose of protecting human health and the environment.  *See* EPA Greenbook of Current Nonattainment Counties for All Criteria Pollutants (data current as of Oct. 31, 2023) (available at https://www3.epa.gov/airquality/greenbook/ancl.html).

On August 11, 2022, North Dakota submitted its Regional Haze Plan to EPA, addressing the regional haze requirements for Regional Haze Round Two, covering years 2018-2028.  North Dakota's Regional Haze Plan seeks to revise the 2010 North Dakota SIP for the first planning period of regional haze.  Exhibit 1, Decl. of L. David Glatt at ¶ 4.  North Dakota determined that its two Class I Federal areas are exceeding the adjusted uniform rate of progress needed to achieve the 2028 and 2064 visibility goals.  Accordingly, North Dakota determined that, for the years 2018 – 2028, the additional emission reduction measures selected upon four-factor consideration required under 40 C.F.R. § 51.308(f)(2)(i) will not provide for a reduction in anthropogenic visibility impairment on the most impaired days for 2028.  As a result, North Dakota determined it is not reasonable to require these additional control measures during this planning period.  On August 23, 2022, the EPA Regional Administrator sent a letter to North Dakota determining that North Dakota's Regional Haze Plan was complete.  Exhibit 1 at ¶ 6.

North Dakota expended thousands of hours conducting extensive technical work developing North Dakota's Regional Haze Plan.  During that time, public comment was received on drafts of North Dakota's Regional Haze Plan, including comments from EPA, Federal Land

Managers, industry, and environmental groups (including Plaintiffs). These comments were considered and addressed in North Dakota's Regional Haze Plan submitted to EPA.

### C. Reviewing a State's SIP.

EPA may only reject determinations made in a State SIP when EPA demonstrates that the determination is not supported by the data or analysis or that it fails to comply with the CAA. *See* CAA § 110(k)(3); *see also* 40 C.F.R. § 51.308(f)(3)(iv) (EPA shall "evaluate the demonstrations developed by the State" towards achieving the visibility goal consistent with whether the State conducted the reasonable progress analysis required under 40 C.F.R. § 51.308(f)(2).) The CAA "gives the [EPA] no authority to question the wisdom of a State's choices of emission limitations" if such choices are "part of a plan which satisfies the standards of § 110(a)(2)`." *Train v. Nat. Res. Def. Council*, 421 U.S. 60, 79 (1975); *see also Union Elec. Co. v. E.P.A.*, 427 U.S. 246, 250 (1976) (the CAA provides that EPA "'shall approve' the proposed plan if it has been adopted after public notice and hearing" and if it meets the "specified criteria" set forth in CAA § 110(a)(2)); *but see Sierra Club v. E.P.A.*, 540 F.2d 1114, 1127-28 (D.C. Cir. 1976).

The CAA § 110 division of authority between EPA and the States mandates that EPA must avoid "over-control" of State SIP plans, and that "EPA cannot require a State to reduce its output of pollution by more than is necessary to achieve attainment in every downwind State . . . ." *E.P.A. v. EME Homer City Generation, L.P.*, 572 U.S. 489, 521-22 (2014); *see also EME Homer City Generation, L.P. v. EPA*, 795 F.3d 118 (D.C. Cir. 2015) (considering over-control challenges in light of the Supreme Court's decision in *E.P.A. v. EME Homer City Generation, L.P.*). Further, while EPA may require specific emission limitations to meet national standards, a "State has virtually absolute power in allocating emission limitations so long as the national standards are met" and the "State may select whatever mix of control devices it desires." *Union Elec. Co.*, 427

U.S. at 267. EPA may reject a State's CAA determination "[o]nly when a state agency's . . . determination is 'not based on a reasoned analysis'" and is "'arbitrary'". *Alaska v. Dep't of Env't Conservation v. E.P.A.*, 540 U.S. 461, 490-91 (2004). It is EPA that must demonstrate that the State's determination was not reasonable. *Id.* at 494.

Any substantive review of North Dakota's Regional Haze Plan may only occur before the U.S. Court of Appeals for the Eighth Circuit after EPA acts on North Dakota's Regional Haze Plan.

### III.   ARGUMENT

The standard for intervention as of right is governed by Fed. R. Civ. P. 24(a), which states in relevant part:

> On timely motion, the court must permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

"Unequivocally, the recognized requirements for intervention as of right in this Circuit are: (1) timeliness; (2) a cognizable interest; (3) impairment of that interest; and (4) lack of adequate representation by existing parties." *Parker v. John Moriarty & Assocs.*, 319 F.R.D. 18, 21 (D.D.C. 2016); *see also Smoke v. Norton*, 252 F.3d 468, 470, 346 (D.C. Cir. 2001); *Williams & Humbert Ltd. v. W.& H. Trade Marks Ltd.*, 840 F.2d 72, 74 (D.C. Cir. 1988); *see also Dimond v. Dist. of Columbia*, 792 F.2d 179, 192 (D.C. Cir. 1986).

North Dakota may intervene as of right pursuant to Fed. R. Civ. P. 24(a) because: (1) its intervention motion is timely; (2) North Dakota has a cognizable interest in the case; (3) North Dakota's absence from the case will impair its ability to protect its interests; and (4) North Dakota's interests are inadequately represented by the existing parties. *See Williams & Humbert, Ltd.*, 840

F.2d at 74.

### A. North Dakota's Motion is Timely as this Case is at the Earliest Stage.

Timeliness is "'judged in consideration of all the circumstances, especially weighing the factors of time elapsed since the inception of the suit, the purpose for which intervention is sought, the need for intervention as a means of preserving the applicant's rights, and the probability of prejudice to those already parties in the case.'" *Karsner v. Lothian,* 532 F.3d 876, 886 (D.C. Cir. 2008), quoting *United States v. British Am. Tobacco Austl. Servs., Ltd*., 437 F.3d 1235, 1238 (D.C. Cir. 2006). "'[W]e do not require timeliness for its own sake'", but "[r]ather, 'the requirement of timeliness is aimed primarily at preventing potential intervenors from unduly disrupting litigation, to the unfair detriment of the existing parties.'" *Amador Cnty. v. U.S. Dep't of the Interior*, 772 F.3d 901, 905 (D.C. Cir. 2014) (citations omitted).

This case is at its earliest stage. The Federal Defendants have not yet filed an answer or certified an administrative record, and the Federal Defendants' answer is not due until January 9, 2024. No briefing schedule has been set and granting North Dakota intervention will not disrupt this litigation or prejudice any party. North Dakota's motion is timely.

### B. North Dakota has Several Significant Legally Cognizable Interests that are Affected by this Litigation, and Disposition of this Litigation may Impair those Interests.

"On timely motion, the court must permit anyone to intervene who … claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24.

The D.C. Circuit determines whether a party has a legally cognizable interest by "looking to the 'practical consequences' of denying intervention . . . ." *Fund for Animals, Inc. v. Norton*,

322 F.3d 728, 735 (D.C. Cir. 2003) (citation omitted).  A party seeking leave to intervene as of right pursuant to Rule 24(a) must further demonstrate that it has both constitutional and prudential standing to participate as a party in the case.  *Mova Pharm. Corp. v. Shalala*, 140 F.3d 1060, 1074 (D.C. Cir.1998) ("Thus, a party that seeks to intervene as of right must demonstrate that it has standing to participate in the action.").  "Whether a proposed intervenor is 'so situated that the disposition of an action may as a practical matter impair or impede [its] ability to protect [its] interest,' Fed. R. Civ. P. 24(a), is determined by 'looking to the practical consequences of denying intervention, even where the possibility of future challenge to the regulation remains available.'" *Akiachak Native Cmty. v. U.S. Dep't of Interior*, 584 F. Supp. 2d 1, 6-7 (D.D.C. 2008) (*quoting Fund for Animals*, 322 F.3d at 735).

A State may intervene in litigation between a private party and the federal government to protect its own sovereign interests.  *Id.* at 6.  "States have a legally protected sovereign interest in 'the exercise of sovereign power over individuals and entities within the relevant jurisdiction[, which] involves the power to create and enforce a legal code.'"  *Wyoming ex rel. Crank v. United States*, 539 F.3d 1236, 1242 (10th Cir. 2008) (citation omitted).  When an action threatens to harm the sovereign interests of a State without affording the State "a full and fair opportunity to be heard on the merits," that harm is considered irreparable.  *Kansas v. United States*, 249 F. 3d 1213, 1227 (10th Cir. 2001).

North Dakota has a vital sovereign interest and duty to its citizens to regulate air emissions in North Dakota to protect and maintain air quality, including visual air quality.  Exhibit 1 at ¶¶ 7-8.  This sovereign interest is recognized by Congress through the cooperative federalism structure of the CAA in which States play a central role in establishing and implementing the measures

9

contemplated by the visibility and regional haze programs. *See Michigan v. E.P.A.*, 268 F.3d at 1083; *BCCA Appeal Group v. E.P.A.*, 355 F.3d at 821-22.

Because the CAA provides that the EPA must approve a SIP that meets the CAA's applicable requirements, North Dakota has a legally protected interest in when and how EPA acts on North Dakota's Haze Plan. 42 U.S.C. § 7410(k).

"When a litigant is vested with a procedural right, that litigant has standing if there is some possibility that the requested relief" will deprive the intervening litigant of a procedural protection to which he is entitled. *Massachusetts v. E.P.A.*, 549 U.S. 497, 518 (2007). Plaintiffs seek to force EPA to act on North Dakota's Haze Plan under 42 U.S.C. § 7410, which action North Dakota has a statutory and procedural right to participate in and defend. Accordingly, North Dakota has standing to ensure that any relief granted in this proceeding does not affect EPA's review of North Dakota's Regional Haze Plan under the statutorily required procedures and timing. Similarly, North Dakota also has such interests with respect to any action by this Court to remedy EPA's alleged failure to perform its non-discretionary duty as to North Dakota's Regional Haze Plan.

### C. North Dakota's Interests are not Adequately Represented by Existing Parties to this Litigation.

"On the issue of lack of adequate representation by the existing parties, the movant need only 'sho[w] that representation of his interest 'may be' inadequate.'" *Parker*, 319 F.R.D. at 21 (quoting *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972)). The burden of demonstrating inadequacy of representation for the purposes of Rule 24(a)(2) is "'not onerous.'" *Crossroads Grassroots Policy Strategies v. Fed. Election Comm'n*, 788 F.3d 312, 321 (D.C. Cir. 2015) (quoting *Fund for Animals*, 322 F.3d at 735). "[M]erely because parties share a general interest in the legality of a program or regulation does not mean that their particular interests

10

coincide so that representation by the agency alone is justified." *Am. Horse Prot. Ass'n v. Veneman*, 200 F.R.D. 153, 159 (D.D.C. 2001); *see also Fund for Animals*, 322 F.3d at 735-36.

Plaintiffs' interests are directly adverse to North Dakota's substantive interests in this matter. North Dakota cannot be presumed to be adequately represented by EPA, since the interests North Dakota seeks to protect are State interests not shared or represented by EPA. North Dakota has the specific and independent objective of preserving its right to regulate sources in North Dakota and the determinations that it has made in its Regional Haze Plan. Exhibit 1 at ¶¶ 7-8. Many of North Dakota's air quality rules are dependent on the outcome of North Dakota's Regional Haze Plan, and any resolution of this case could impact North Dakota's ability to implement emission reductions measures under North Dakota's Regional Haze Plan. *Id.* Neither Plaintiffs nor Federal Defendants can adequately protect North Dakota's interests with respect to North Dakota's August 11, 2022 Haze Plan.

**D.  North Dakota has Article III Standing to Participate in these Proceedings.**

North Dakota has standing to participate in this action under Article III of the United States Constitution. *See Deutsche Bank Nat'l Trust Co. v. Fed. Deposit Ins. Corp.*, 717 F.3d 189, 194 (D.C. Cir. 2013). Indeed, for the reasons set forth above, North Dakota satisfies the following constitutional standing requirements: "(1) 'the applicant must have suffered an injury in fact, defined as harm that is concrete and actual or imminent, not conjectural or hypothetical'; (2) the injury 'must be fairly traceable to the government conduct alleged'; and (3) 'it must be likely that the requested relief will redress the alleged injury.'" *Friends of Animals v. Kempthorne*, 452 F. Supp. 2d 64, 68 (D.D.C. 2006) (quoting *Environmental Defense v. Leavitt*, 329 F.Supp.2d 55, 64 (D.D.C.2004). When, as here, "a party seeks to intervene as a defendant to uphold what the government has done, it [must] establish that it will be injured in fact by the setting aside of the government's action it seeks to defend, that this injury will have been caused by that invalidation,
11

and the injury would be prevented if the government action is upheld." *Am. Horse Prot. Ass'n,* 200 F.R.D. at 156. "Our cases have generally found a sufficient injury in fact where a party benefits from agency action, the action is then challenged in court, and an unfavorable decision would remove the party's benefit." *Crossroads*, 788 F.3d at 317 (D.C. Cir. 2015).

As a State, North Dakota is entitled to "special solicitude in [the] standing analysis." *Massachusetts v. E.P.A.*, 549 U.S. at 520. In *Massachusetts v. E.P.A.*, the Supreme Court also recognized that a State government possesses an "'interest independent of and behind the titles of its citizens, in all the earth and air within its domain'" that gives them each a "special position and interest." *Id*. at 518-19 (quoting *Georgia v. Tenn. Copper Co.*, 206 U.S. 230, 237 (1907)). The Supreme Court noted: "It is of considerable relevance that the party seeking review here is a sovereign State and not . . . a private individual." *Id*. at 518. Further, even if North Dakota did not have a clearly established special solicitude in the outcome of its Haze Plan, it has a statutory and procedural right to defend EPA's action on its Haze Plan under 42 U.S.C. § 7410.

The D.C. Circuit applies the same test to determine the existence of constitutional standing that it applies to determine whether a prospective intervenor has a legally cognizable interest under Rule 24(a). *Crossroads*, 788 F.3d at 320. This Court should therefore find that North Dakota has constitutional standing for all the reasons set forth above – including the protection of North Dakota's procedural rights to defend North Dakota's Regional Haze Plan and to ensure that no extra-judicial settlement between the parties is made implicating those procedural rights.

> **E.      In the Alternative, the Court Should Grant North Dakota Permissive Intervention Pursuant to Federal Rule of Civil Procedure 24(b)(1) or (b)(2).**

Alternatively, this Court should allow North Dakota to intervene permissively in this action under Fed. R. Civ. P. 24(b)(1) or (b)(2). Rule (b)(1) provides in relevant part: "On timely motion,

the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B).

The D.C. Circuit requires three showings for permissive intervention: "(1) an independent ground for subject matter jurisdiction; (2) a timely motion; and (3) a claim or defense that has a question of law or fact in common with the main action." *Equal Emp. Opportunity Comm'n v. Nat'l Children's Ctr., Inc.*, 146 F.3d 1042, 1046 (D.C. Cir. 1998). A reviewing court "'shall consider whether the requested intervention will unduly delay or prejudice the adjudication of the rights of the original parties.'" *Friends of Animals*, 452 F. Supp. 2d at 68 (quoting Fed. R. Civ. P. 24(b)). The decision to allow intervention under Rule 24(b) is "inherently discretionary." *Equal Emp. Opportunity Comm'n*, 146 F.3d at 1046. North Dakota's Motion is timely for the reasons stated above. As for a "common question of law or fact," the questions of law and fact before the Court are intimately tied with the substantive issues at play specific to the submittal of the North Dakota Regional Haze Plan, and these are precisely the issues North Dakota intends to address.

Additionally, Rule (b)(2) provides in relevant part: "On timely motion, the court may permit a federal or state governmental officer or agency to intervene if a party's claim or defense is based on: (A) a statute or executive order administered by the officer or agency; or (B) any regulation, order, requirement, or agreement issued or made under the statute or executive order." Fed. R. Civ. P. 24(b)(2). In nearly identical circumstances, the State of Arkansas was granted permissive intervention as a defendant-intervenor in an action where the Sierra Club was seeking to compel EPA to either (1) promulgate a regional haze federal SIP for Arkansas by a date certain; or (2) approve a revised regional haze SIP for Arkansas by a date certain. *Sierra Club v. McCarthy*, No. 4:14CV00643 JLH, 2015 WL 5006069, *1 (E.D.Ark. Aug. 24, 2015). The District Court held that Arkansas should be granted permissive intervention because "issue that ultimately will be

decided in this litigation is the deadline by which the EPA must promulgate a federal implementation plan or approve a state implementation plan as required by 42 U.S.C. § 7410(c)(1)" and thus Arkansas's defense was "based upon the fact that the [CAA] is jointly administered by the State and the EPA as part of the 'cooperative federalism' mandated by the Clean Air Act." *Id.* at *2. Like in *Sierra Club v. McCarthy,* North Dakota's defense is based upon the cooperative federalism of the CAA setting forth North Dakota's and EPA's joint responsibilities governing the final approval or disapproval of North Dakota's Regional Haze Plan and the timing for the same.

## IV.   CONCLUSION

For the reasons stated above, North Dakota respectfully requests permission from this Court to participate in the above captioned matter as a Defendant-Intervenor.

Respectfully submitted this 5th day of December, 2023.

> DREW H. WRIGLEY
> ATTORNEY GENERAL
> STATE OF NORTH DAKOTA
>
> /s/ *Paul M. Seby*
> Paul M. Seby
> Special Assistant Attorney General
> Greenberg Traurig, LLP
> 1144 15th St, Suite 3300
> Denver, CO 80202
> Phone: (303) 572-6584
> Email: sebyp@gtlaw.com
>
> Erik P. Wallevand
> Assistant Attorney General
> 500 N. 9th Street
> Bismarck, ND 58501-4509
> Phone: (701) 328-4768
> Email: ewallevand@nd.gov

COUNSEL FOR APPLICANT IN INTERVENTION STATE OF NORTH DAKOTA

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on the 5th day of December 2023, a true and correct copy of the foregoing was filed with the Clerk of the Court using the CM/ECF system, which will send notification of this filing to the attorneys of record.

*/s/ Paul M. Seby*